**2017 UT App 79**

# THE UTAH COURT OF APPEALS

STATE OF UTAH, IN THE INTEREST OF D.V. AND A.V.,
PERSONS UNDER EIGHTEEN YEARS OF AGE.

E.V.,
Appellant,
*v.*
STATE OF UTAH,
Appellee.

Per Curiam Opinion
No. 20170196-CA
Filed May 11, 2017

Third District Juvenile Court, Salt Lake Department
The Honorable Charles D. Behrens
No. 1094724

Jordan Putnam, Attorney for Appellant

Sean D. Reyes, Carol L.C. Verdoia, and John M.
Peterson, Attorneys for Appellee

Martha Pierce, Guardian ad Litem

Before JUDGES STEPHEN L. ROTH, KATE A. TOOMEY, and DAVID N.
MORTENSEN.

PER CURIAM:

¶1     E.V. (Mother) appeals the termination of her parental
rights to D.V. and A.V. We affirm.

¶2     "Whether a parent's rights should be terminated presents
a mixed question of law and fact." *In re B.R.*, 2007 UT 82, ¶ 12,
171 P.3d 435. "Because of the factually intense nature of such an
inquiry, the juvenile court's decision should be afforded a high
degree of deference." *Id.* "Thus, in order to overturn the juvenile
court's decision '[t]he result must be against the clear weight of

the evidence or leave the appellate court with a firm and definite conviction that a mistake has been made.'" *Id.* (alteration in original) (quoting *In re Z.D.*, 2006 UT 54, ¶¶ 33, 40, 147 P.3d 401). Further, "[w]hen a foundation for the court's decision exists in the evidence, an appellate court may not engage in a reweighing of the evidence." *Id.*

¶3     The juvenile court found that several grounds supported termination of Mother's parental rights. The juvenile court concluded that Mother neglected or abused the children, s*ee* Utah Code Ann. § 78A-6-507(1)(b) (LexisNexis 2012), and was an unfit or incompetent parent, *see id.* § 78A-6-507(1)(c). The court also found that Mother experienced a failure of parental adjustment because the Division of Child and Family Services (DCFS) made reasonable and appropriate efforts to return the children to her and Mother had been "unable or unwilling, within a reasonable time, to substantially correct the circumstances, conduct, or conditions that led to placement of [the children] outside [her] home." *See id.* § 78A-6-507(1)(e). The court further concluded that the children had been in an out-of-home placement under the supervision of DCFS, *see id*. § 78A-6-507(1)(d)(i); that Mother had "substantially neglected, willfully refused, or has been unable or unwilling to remedy the circumstances that caused the child to be in an out-of-home placement," s*ee id.* § 78A-6-507(1)(d)(ii); and that "there is a substantial likelihood that [Mother] will not be capable of exercising proper and effective parental care in the near future," *see id.* § 78A-6-507(1)(d)(iii). The juvenile court concluded that the children had suffered or were substantially likely to suffer serious detriment due to parental unfitness, *see id.* § 78A-6-503(7) (LexisNexis Supp. 2016), and that it was strictly necessary to terminate parental rights. After finding grounds for termination, the court concluded it was in the children's best interest that Mother's parental rights be terminated. *See id.* § 78A-6-503(12).

¶4     "Utah law requires a court to make two distinct findings before terminating a parent-child relationship." *In re R.A.J.*, 1999

UT App 329, ¶ 7, 991 P.2d 1118. "First, the court must find that the parent is below some minimum threshold of fitness, such as a finding that a parent is unfit or incompetent based on any of the grounds for termination" in section 78A-6-507. *Id.* (citation and internal quotation marks omitted). "Second, the court must find that the best interests and welfare of the child are served by terminating . . . parental rights." *Id.* Mother challenges the sufficiency of the evidence to support each ground for termination. Under Utah Code section 78A-6-507, the finding of a single ground will support termination of parental rights. *See* Utah Code Ann. § 78A-6-507(1). The evidence supports the juvenile court's findings that Mother was an unfit or incompetent parent and that she failed in her parental adjustment.

¶5    In January 2014, Mother gave birth to D.V., who tested positive for exposure to methamphetamine, marijuana, and amphetamine. Mother's older child, A.V., also tested positive for exposure to methamphetamine. DCFS took custody of both children, who were adjudicated as neglected by Mother. The juvenile court ordered reunification services for Mother. The child and family plan required Mother to complete a substance abuse evaluation and follow the recommendations, submit to random drug testing, complete parenting education, and obtain stable housing and income. Mother participated in family dependency drug court and completed inpatient substance abuse treatment and parenting training at House of Hope. In May 2014, the juvenile court returned the children to Mother's custody with protective supervision. The children were removed from Mother again in November of 2014 after she relapsed. Mother continued to receive services until December 2015, when the court returned the children to her custody and closed the case.

¶6    However, Mother fell back into her previous lifestyle in January 2016 and again began using methamphetamine. Mother placed her children with their maternal grandmother. Mother

had not resided with D.V. and A.V. since January 2016. Mother had not been employed since December 2015. Mother had not had a home of her own since December 2015 and was living with various friends and attempting to avoid arrest on outstanding warrants. On July 25, 2016, Mother was arrested after a car in which she and her children were passengers was stopped by police. Mother testified that the driver threw something into her lap, which she placed in her pocket. That substance was methamphetamine. There also were firearms in the car. After the July incident, Mother signed a notarized letter giving the maternal grandmother custody of her children. The grandmother also had a history of drug use and a child in State custody. In August 2016, the State obtained a warrant to remove the children for a third time. Mother was incarcerated in October 2016, while awaiting trial on charges from the July incident. In December 2016, Mother pleaded guilty to one count of possession with the intent to distribute, a second degree felony. She was sentenced to a prison term of zero to fifteen years, which was suspended. Mother was placed on thirty-six months of probation and began serving 180 days in jail on December 15, 2016. Mother may be eligible for early release due to her participation in the "CATS" treatment program at the jail and hopes to obtain transitional housing.

¶7 Evidence of Mother's substance abuse, history with DCFS, and drug-related incarceration was sufficient to support the juvenile court's determination that she was an unfit or incompetent parent. The evidence was also sufficient to support the juvenile court's determination that Mother had failed in her parental adjustment. Mother repeatedly failed to address her substance abuse problem despite receiving over a year of services, causing her children to be removed three times from her custody, and resulting in her incarceration. Although Mother now claims that DCFS failed to provide services to address the depression and anxiety contributing to her substance abuse problems, this claim was based upon speculation about the contents of her inpatient treatment.

¶8 Mother's additional claim that the evidence was insufficient to demonstrate that the children suffered or were substantially likely to suffer serious detriment due to Mother's unfitness lacks merit. In summary, the children were removed three times from her custody and were deprived of her care due to her incarceration. The children showed indications of separation anxiety, had trouble sleeping, and were enrolled in a therapeutic preschool. The juvenile court found that the children were in need of stability and protection from abuse and neglect.

¶9 Mother also challenges the juvenile court's determination that it was in the children's best interest to terminate parental rights to allow them to be adopted. Mother acknowledged that she was not in a position to regain custody of her children and advocated for an order placing the children with a maternal relative in a permanent guardianship or authorizing adoption by a relative. Like the determination of unfitness, the best interest determination "should be afforded a high degree of deference." *In re B.R.*, 2007 UT 82, ¶ 12, 171 P.3d 435. The juvenile court found that the children were bonded to the foster parents, who were willing to adopt them and provide them with safety and protection from neglect.[1] The juvenile court's best interest determination is supported by sufficient evidence.

¶10 Because "a foundation for the court's decision exists in the evidence," *see id.*, we affirm.

———————

1. At the time of the termination trial, DCFS had conducted a preliminary investigation of a potential kinship placement that was also willing to adopt the children. That preliminary investigation raised issues about the kinship placement that had not been resolved at the time of the termination trial.